A04A0492. DEPARTMENT OF TRANSPORTATION
v. BUNN et al.
A04A0493. DEPARTMENT OF TRANSPORTATION
v. HENDERSON FARMS.

(603 SE2d 2)

MIKELL, Judge.

In these companion cases, this Court granted the Department of Transportation's ("DOT") application for interlocutory appeal to consider the trial court's order partially granting condemnees' motion to set aside, vacate and annul DOT's declaration of taking. On June 11, 2002, DOT filed two separate condemnation actions against condemnees/landowners Andrew Carey Bunn, Sr., James L. Henderson, III, Ginger Henderson Craft, Betty Ann Henderson Abblitt,

---

and Henderson Farms, L.P. to acquire fee simple rights, easement rights and access rights for a 9.3 mile road project on State Route 20 in the City of Hampton, Henry County ("the Project"). Of the 9.3 miles, approximately 4.3 miles are to be used as a bypass around the City of Hampton, and the remaining 5.0 miles involve the widening and reconstruction of existing State Route 20. Condemnees operate a cattle farm on their property, which is located on the bypass section of the Project.

In each action, condemnees filed a timely notice of appeal and a motion to set aside, vacate and annul, alleging that, as a result of the taking, they will have no access to State Route 20 and that DOT's decision to limit access on the bypass was made in bad faith. The trial court consolidated the two actions for purposes of the motion to set aside and, after a hearing, entered an order granting the motion and setting aside DOT's acquisition of limited access rights only. On appeal to this Court, DOT argues that the trial court erred (1) in finding that DOT acted in bad faith; (2) in setting aside only a portion of the condemnation; and (3) in granting access rights on a newly created limited access highway. We disagree with DOT that the trial court erred in finding bad faith; however, we agree that the trial court erred in setting aside only a portion of the rights acquired by the condemnation.

At the hearing on the motion to set aside, James L. Henderson, Jr., condemnees' representative, testified that in late 1998, the Newland Corporation of California approached him about developing a planned community on his property. The development was dependent upon direct access to State Route 20. Around the same time, Henderson granted access to his property to DOT surveyors working on plans for State Route 20. In January 1999, Henderson attended a public meeting regarding the Project. The informational letter Henderson picked up at the meeting said nothing about "a limited access highway." When Henderson left the meeting he believed that he would have direct access to State Route 20. After the meeting, Henderson wrote a letter to David Studstill, the State Environmental/Location Engineer on the Project, stating that, "[w]e now have six access[es] on Highway 20 and three where the new route crosses the Hampton-Locust Grove Road. We would expect no less." On January 20, 1999, condemnee Betty Ann Henderson Abblitt, Henderson's daughter, also wrote to Studstill stating that condemnees would accept nothing less than "[a]dequate curb cuts to fully access remaining property for both current and future land use." In a letter to Henderson dated April 19, 1999, Studstill replied that, "[t]he number and location of access points would have to be discussed with the right-of-way representative when he makes his on-site visit."

After appraisers visited the property, DOT officials met with Henderson to discuss "money," but never mentioned that State Route 20 would be a limited access highway. At a fifth meeting with DOT sometime in early 2001, Henderson again stated that access was a primary concern, and DOT officials responded, "[w]e would like to talk money first, and then we'll talk access." Henderson responded that condemnees "didn't want to work out the money until [they] worked out access." Henderson was never told that there was no direct access to State Route 20 or that it was a limited access highway. After the fifth meeting, Henderson received from DOT an offer letter dated August 2, 2001, and Project maps, which for the first time showed that State Route 20 would be a limited access highway. That letter as well as another letter to Henderson from DOT dated September 6, 2001, stated that, "certain access rights will be needed. This is more particularly shown on the plat attached to the option provided with this letter." At a sixth meeting with DOT at Henderson's counsel's office, DOT again told Henderson that, "access could be worked out but after the price was negotiated." Despite numerous meetings on the issue, DOT neither gave Henderson the access points he requested nor advised him that DOT policy prohibited access off of a bypass.

Jerry Hobbs, an assistant engineer with DOT's Office of Environment and Location, testified that DOT limited access to the bypass portion of State Route 20 because the bypass is on a new location. Hobbs confirmed that, under DOT policy, the fact that a project is on a new location is more important than whether it is a bypass, or a rural or urban arterial road, and that the decision to limit access to State Route 20 had been "made from concept." Hobbs identified a DOT project information sheet, dated February 25, 1999, which states that access to the bypass portion of State Route 20 will be partial limited access. The concept report for the Project, dated April 8, 1999, provided that, "TYPE OF ACCESS CONTROL: Partially Controlled on new location and by permit along existing roadways."

According to Jason McCook, a DOT design group manager, part of the Project includes the relocation of Richard Petty Boulevard. McCook stated that although DOT is limiting access to this relocation as well, property owners were given direct access to the road because their property would otherwise be landlocked. McCook also testified that the decision to limit access on the bypass portion of State Route 20 was made from "the very beginning." McCook testified that Henderson will still have access onto a portion of old State Route 20, and that all property owners to the west of Henderson's property are all limited access. McCook testified that he was instructed by DOT upper management to give Henderson one access break point.

Andy Casey, an assistant design group leader with DOT, testified that preliminary plans would reflect whether a roadway had been designated limited access or not, but that none of the 1999 plans for the Project show any of State Route 20 along the subject properties as being limited access. Revised plans dated June 17, 2002, show that DOT eventually changed the 1999 plans and limited access to condemnees' property. DOT's preliminary field review report for the Project, dated December 13, 1999, stated that access would be controlled by permit. DOT's preliminary field review report for the bypass section only, dated April 24, 2002, stated that access control would be "limited access/permit." Casey stated, however, that the preliminary plans were, by definition, not always completely labeled. On direct examination, Casey testified that the acquisition of access rights from the Henderson parcels were "always going to be limited access from the concept phase on to the final phase."

Tommy Phillips, a retired employee of DOT, testified that on February 4, 2002, he attended DOT's sixth meeting with Henderson. Phillips stated that dollars were discussed very briefly at the meeting and that the meeting was terminated when DOT officials could not give assurances of plan changes. Phillips denied that he ever expressed "an ability to discuss whether or not access could be negotiated on [the] subject parcels."

Based on the evidence presented at the hearing, the trial court entered the following findings of fact and conclusions of law: (1) DOT made its decision to limit access on April 8, 1999; (2) Henderson learned of DOT's decision on August 2, 2001; (3) between April 8, 1999, and August 2, 2001, Henderson exchanged correspondence and met with DOT representatives five times; (4) throughout all of the meetings and correspondence, Henderson consistently told DOT that access to the new highway/bypass was condemnees' most important consideration and that compensation was secondary to access; (5) throughout all of the meetings and correspondence, DOT never told Henderson of its decision to limit access, but rather told Henderson that if he would agree on a price for the land, access could be worked out; (6) the 1999 plans did not designate the Project as limited access; and (7) because the purpose of the entire Project is to bypass the City of Hampton, DOT's decision to limit access on only 4.3 miles of a new 9.3 mile bypass was arbitrary and "not based on any definitive study put in evidence." The trial court concluded that DOT had acted in bad faith by not divulging its decision to limit access and by insisting on taking title to the land now and working out access later, and that it had acted beyond the scope of its authority by making the bypass portion of the Project limited access without any real reason. The trial court stated that, "[t]he continued and systematic holding by the DOT of access as the carrot in front of Henderson to purchase the land at

a price advantageous to the DOT is not right and it should not be legal." Acknowledging that its decision was one of first impression, the trial court granted condemnees' motion to set aside only the limited access portion of both condemnation cases.

1. DOT moves to strike condemnees' second supplemental brief because condemnees failed to obtain leave of court. Counsel for both parties complied with this Court's request to file supplemental briefs within ten days of oral argument. However, condemnees filed a second supplemental brief to correct certain factual misstatements made by DOT in its supplemental brief. Because condemnees' second supplemental brief was filed without leave of court, DOT's motion to strike is granted. See Court of Appeals Rule 24.

2. DOT argues that the trial court erred in finding that it acted in bad faith and in finding that its decision to limit access on the bypass portion of the Project was arbitrary. We agree with the latter contention but disagree with the former.

OCGA § 32-3-11 authorizes the superior court to set aside a taking if the condemnee can show fraud, bad faith, or the improper use, abuse or misuse of the condemnor's power. OCGA § 32-3-11 (a) and (b). "In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken." (Citation and punctuation omitted.) *Dept. of Transp. v. Hudson*, 179 Ga. App. 842, 843 (348 SE2d 106) (1986). See also *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452, 454 (5) (339 SE2d 583) (1986) ("[c]ourts must not substitute their judgment for that of the condemning authority — neither as to the quantum of the *interest* to be condemned, nor the location or the quantum of *land* to be acquired.") (citation omitted; emphasis in original); *City of Atlanta v. First Nat. Bank of Atlanta*, 246 Ga. 424 (271 SE2d 821) (1980) ("[a] court should not interfere with an exercise of the discretion of a condemning authority determining the necessity of taking land for public purposes and selecting the location and amount of land reasonably necessary unless the condemning authority abused its discretion or exceeded its authority.") (footnote omitted). "In reviewing a non-jury judgment, an appellate court will not reverse the lower court's finding of fact if there is 'any evidence' to support it." (Citation and punctuation omitted.) *Dept. of Transp. v. B & G Realty*, 197 Ga. App. 613, 615 (1) (398 SE2d 762) (1990). See also *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 622 (261 SE2d 343) (1979) (in case involving the condemnation of land for use by MARTA, this Court acted improperly when it reversed the trial court and imposed its own evaluation of the evidence: "[e]ven though the evidence regarding necessity may have been in conflict, the trial judge was authorized to

determine the factual issues in the case. These findings should not be disturbed on appeal if there is evidence to support them.").

If we had been sitting as the trier of fact, we might or might not have had the opinion of the evidence which the trial court reached. But in the entire record, and in the transcript of the hearing on the motion to set aside, including the documentary evidence, there is evidence to support the trial court's findings. We accept those findings under the any evidence rule.

DOT is correct that Georgia law requires only that a property owner be notified at the time a petition is filed of what rights and/or interests are being acquired; however, Georgia law also provides that DOT's pre-condemnation actions are subject to OCGA § 32-3-11. Compare OCGA § 32-3-5 and *State Highway Dept. v. Smith*, 219 Ga. 800, 803-804 (1) (a) (136 SE2d 334) (1964) (Act authorizing Director of State Highway Department to condemn private property for public use without notice to property owner or opportunity to be heard does not violate due process) with *B & G Realty*, supra (affirming a set aside and award of attorney fees based upon DOT's improper use of its powers during the pre-condemnation negotiation process). The trial court was authorized to accept Henderson's testimony about negotiations with DOT and reject Phillips' testimony in reaching its conclusion that DOT acted in bad faith during the pre-condemnation process. The evidence supports the trial court's finding that DOT acted in bad faith by using access to lure Henderson to the negotiating table.

In a related argument, DOT argues that the trial court erred in finding that the purpose of the entire Project was to bypass the City of Hampton and that, therefore, DOT's decision to limit access on only 4.3 miles of the Project was arbitrary. We agree that the trial court erred in finding that the purpose of the entire Project is to bypass the City of Hampton. Accordingly, the trial court also erred in finding that, as a matter of law, DOT's decision to limit access on only 4.3 miles of the Project was arbitrary. However, because a finding of bad faith alone is sufficient to authorize the trial court to set aside a declaration of taking, we need not address this argument further.

3. DOT next argues that the trial court erred in setting aside only a portion of the condemnation. We agree. Under OCGA § 32-3-11, the remedy for a finding of bad faith is to set aside the entire declaration of taking. Accordingly, we reverse the trial court's decision setting aside only the limited access portion of the declarations of taking and remand the cases to allow the entry of new orders setting aside the declarations of taking in their entirety.

4. In light of our holding in Division 3, we need not reach DOT's remaining enumeration.

*Judgment affirmed in part, reversed in part, and case remanded.*
*Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 23, 2004 —
RECONSIDERATION DENIED JULY 26, 2004 —

*Thurbert E. Baker, Attorney General, Ray O. Lerer, Senior Assistant Attorney General, Power, Futch & Cooper, Warren R. Power, LeAnne P. Cooper, Anne W. Sapp,* for appellant.
*Smith, Welch & Brittain, A. J. Welch, Jr., William A. White,* for appellees.